**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| **JOSEPH HUNSINGER on behalf of himself and others similarly situated,** | : : : : | **Case No. 1:26-cv-6927** |
| **Plaintiff,** | : : : | **JURY TRIAL DEMANDED** |
| **v.** | : : | |
| **UNITED AIRLINES, INC.** | : : | |
| **Defendant.** | : : : | |

## CLASS ACTION COMPLAINT

1. Plaintiff Joseph Hunsinger ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Throughout 2025 and into 2026, United Airlines, Inc. ("United" or "Defendant") sent Plaintiff multiple text messages (the "Texts") which purported to be "flight updates" texts.

3. The Texts apparently were intended for someone else as they referred to a flight to which Plaintiff had no connection to whatsoever.

4. All of the Texts were received on the personal cellular phone owned by Plaintiff and used for residential purposes.

5. At all relevant times, the cell phone on which the Texts were received was registered on the National Do Not Call Registry.

1

6.     At all relevant times, the bill for the cell phone on which the Texts were received was in plaintiff's name.

7.     Plaintiff never consented to receive the Texts.

8.     Plaintiff does not have an established business relationship with United.

9.     The texts were not merely "flight updates." They had a dual purpose as they also solicited Plaintiff to purchase United's goods or services.

10.     Specifically, each text contained a hyperlink that was the sole mechanism by which Plaintiff could access the purported flight information. That hyperlink directed Plaintiff to a United-controlled webpage replete with advertisements and solicitations for paid United products and services, including credit cards, seat upgrades, vacation packages, and additional flights.

11.     The commercial content was not incidental or separate from the informational content; rather, Plaintiff was required to navigate through the promotional material to access the flight information referenced in the text.

12.     Plaintiff continued to receive dual purpose telemarketing texts from United even after he explicitly informed United that he wanted the Texts to stop and that his number was listed on the National Do Not Call Registry.

13.     The TCPA requires a seller, such as United, to stop sending telemarketing texts to consumers upon demand. This requirement applies even if a consumer's residential number is not listed on the Do Not Call Registry.

14.     Some of the dual purpose Texts United sent to Plaintiff were sent well prior to 8:00 a.m.

15. The TCPA prohibits telemarketers from sending solicitation texts to any residential telephone subscriber prior to 8:00 a.m. or after 9:00 p.m. local time at the called party's location. *See* 47 C.F.R. § 64.1200(c)(1).

16. The TCPA further prohibits the initiation of telephone solicitations if the residential telephone subscriber's number is listed on the Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2).

17. As it is suspected that United's transmission of dual purpose telemarketing texts to consumers' personal numbers in violation of the TCPA is widespread, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal, dual purpose telemarketing texts calls from United.

18. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

19. Plaintiff Joseph Hunsinger is a Texas resident.

20. Defendant United Airlines, Inc., is a corporation headquartered in Chicago, Illinois.

### Jurisdiction & Venue

21. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

22. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as United is headquartered in this District.

**The Telephone Consumer Protection Act**

23.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

24.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

25.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

26.     Pursuant to this statutory mandate, the FCC established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014* ("DNC Order").

27.     The TCPA provides that each person who receives more than one call on their cell phone after registering their phone number on the National Do Not Call List is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

28.     Pursuant to its statutory mandate, the FCC has also established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992).

29. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7). Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

30. In this regard, the TCPA affords special protections for people who, like Plaintiff, requested to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 C.F.R. § 64.1200(d), (e); 47 U.S.C. § 227(c)(5).

31. A consumer's company specific do-not-call request terminates any prior established business relationship exemption to the TCPA even if the consumer continues to do business with the seller. *See* 47 C.F.R. § 64.1200(f)(5).

32. A consumer's company specific do-not call request withdraws any prior consent provided by the consumer to receive telemarketing calls. *See* 47 C.F.R. § 64.1200(a)(10).

33. The TCPA also provides that no person or entity shall initiate any telephone solicitation to any residential telephone subscriber before the hour of 8:00 a.m. or after 9:00 p.m. local time at the called party's location. *See* 47 C.F.R. § 64.1200(c)(1).

34. The FCC has specifically addressed "dual purpose" communications that combine informational content with promotional material, concluding that such communications "would, in most instances, constitute 'unsolicited advertisements,' regardless of the customer

service element to the call." *Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, ¶ 142 (2003).

### Factual Allegations

35.     Defendant is in the business of providing commercial flight services to the general public.

36.     One of Defendant's strategies for generating business is through the use of text solicitations that it sends to consumers who have requested texts to receive updates as to their flights, such as check in reminders, seat assignments, and gate changes.

37.     Recipients of those texts, however, cannot access the flight update information they have consented to receive unless utilizing a hyperlink contained in their "flight update" texts.

38.     That hyperlink then directs the consumer to a United web screen where they can access "flight updates" via a drop-down menu. That same web screen, however, is replete with solicitations imploring the consumer to, for example, purchase a seat upgrade, to purchase wi-fi access, to obtain a United branded credit card, to join the United Mileage Club, and to "plan your next trip" by purchasing an additional United flight.

39.     Plaintiff is a consumer based in Dallas, Texas. His personal cell phone (*** *** 0175) has been on the DNC since October of 2020.

40.     Plaintiff's cell phone number is used for residential purposes and the time zone at Plaintiff's location is Central Time.

41.     In July of 2025, Plaintiff began receiving texts from United Airlines on his DNC listed cell phone number.

42.     The text informed him that he had subscribed to United Airlines flight alerts.

43.     Plaintiff had never done so.

44.     United does not have an Established Business Relationship with Plaintiff.

45.     Plaintiff received the first text on July 11, 2025. It informed him that he had subscribed to the "flight alerts" program.

46.     The text was apparently intended for someone else.

47.     Plaintiff did not sign up for United flight alerts.

48.     On July 16, 2025, and in response to this text Plaintiff responded STOP.

49.     The Texts did not stop.

50.     On August 18, 2025, Plaintiff received a text informing him it was time to check in for a flight to San Francisco.

51.     The text was intended for someone else as Plaintiff was not flying to San Francisco on that day.

52.     In order to check in for his flight, Plaintiff was directed to the link https://gofly.united.com/nWgo6P8oWH. In addition to a menu option allowing Plaintiff to "check in," this link directed Plaintiff to a United webpage containing solicitations to "plan your next trip" for discounted travel, to earn up to 90,000 bonus miles with a United MileagePlus Card, to save by bundling flights, hotels, and car rentals, and to join the United Club. Some of the commercial content displayed via the "flight update" hyperlink is replicated as follows:



53. On August 19, 2025, Plaintiff received a second text informing him it was time to check in for a flight to San Francisco. The text was intended for someone else.

54. The text included a link to https://gofly.united.com/QsvbeSyOj1. In addition to a menu option allowing Plaintiff to "check in" this link contained solicitations to "plan your next trip, for discounted travel, and also promoted the United Club and the United Club Visa card.

55. The Text was sent to Plaintiff at 7:25 a.m. Central Time, in violation of the TCPA's prohibition on telephone solicitations before 8:00 a.m. local time.

56. On August 19, 2025, Plaintiff received a "seat assignment" text intended for someone else.

57. The text included a link to https://gofly.united.com/EFlhFEjvWp. This link contained solicitations to "plan your next trip, for discounted travel, and also promoted the United Club and the United Club Visa card.

58. On August 19, 2025, Plaintiff received a "gate change" text intended for someone else.

59. The text included a link to https://gofly.united.com/1f0PZBmgi4. This link contained solicitations to "plan your next trip, for discounted travel, and also promoted the United Club and the United Club Visa card.

60. On August 27, 2025, in response to the above text messages, Plaintiff made a second demand that the Texts cease.

61. Specifically, on this same date, Plaintiff responded and informed United that his number was on the National DNC Registry.

62. To be certain his DNC demand was to be understood even by a robot or artificial intelligence, Plaintiff informed United:

8

*My phone number is registered on the National Do Not Call Registry. Do not send me anymore ATDS messages, stop, put my number on your internal DNC list. I never gave you my consent to receive ATDS texts of calls from you. Send me a copy of your company's DNC policy*

63. Plaintiff did not receive any response back from United in response to his company specific Do Not Call request.

64. Plaintiff never received a copy of United's DNC Policy as requested.

65. On August 29, 2025, Plaintiff received a text informing him it was time to check in for a flight to Denver.

66. The text was intended for someone else.

67. The text included a link to https://gofly.united.com/QGWLuOfAS1. This link contained solicitations to "plan your next trip, for discounted travel, and also promoted the United Club and the United Club Visa card.

68. On August 30, 2025, Plaintiff received a second text informing him it was time to check in for a flight to Denver.

69. The text was intended for someone else.

70. The text included a link to https://gofly.united.com/on5vvLX9ph. This link contained solicitations to "plan your next trip, for discounted travel, and also promoted the United Club and the United Club Visa card.

71. The Text was received at 5:31 a.m. Central Time, in violation of the TCPA's prohibition on telephone solicitations before 8:00 a.m. local time.

72. On August 30, 2025, Plaintiff received a "welcome to Denver" text and noting the departure time of apparently a connecting flight to Eureka.

73. The text was intended for someone else.

9

74. The text included a link to https://gofly.united.com/RVCEXwE2LT. This link contained solicitations to "plan your next trip, for discounted travel, and also promoted the United Club and the United Club Visa card.

75. On October 19, 2025, in response to the above text messages, Plaintiff responded via text- informing United that his number was on the National DNC Registry and demanding that the text stop.

76. He also stated that he had previously made a DNC request.

77. Plaintiff never received a response from United to this third DNC request.

78. United did not obtain Plaintiff's prior express written consent prior to sending the Texts.

79. One of United's purposes in sending the Texts was to sell its goods or services to Plaintiff.

80. The Texts constituted "telephone solicitations" as defined by 47 U.S.C. § 227(a)(4) because they were initiated for the purpose of encouraging the purchase of United's property, goods, or services. Although the Texts facially concerned flight updates, the hyperlinks embedded in each Text were the sole mechanism by which the recipient could access the referenced flight information. Those hyperlinks routed the recipient to United-controlled webpages that prominently displayed advertisements for paid United products and services— including United MileagePlus credit cards offering up to 90,000 bonus miles, vacation packages bundling flights, hotels, and car rentals, fare maps encouraging the purchase of additional flights, and United Club memberships—thereby encouraging the recipient to purchase United's goods and services.

81.     United used unique, recipient- or itinerary-specific URLs in its text messages not merely to provide flight information, but also to route recipients to United-controlled webpages containing specific commercial offers and to track recipient engagement with those pages, including whether recipients clicked the links and were exposed to offers for United products and services.

82.     Upon information and belief, the web pages the links United provided sent the user to contained numerous advertising, analytics, tag-management, experimentation and tracking requests, including requests associated with Google advertising services, DoubleClick, Google Analytics, Tealium, Optimizely, Quantum Metric, Dynatrace, Amazon advertising, Meta/Facebook, The Trade Desk, AppNexus/Xandr, LiveRamp, Yahoo, and Pinterest.

83.     The Texts violated Plaintiff's privacy and were an annoying, harassing nuisance.

84.     Plaintiff and all members of the Classes, defined below, have been harmed by the acts of United because their privacy has been violated and they were annoyed and harassed.

### Class Action Allegations

85.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

86.     The classes of persons Plaintiff proposes to represent is tentatively defined as:

<u>Class 1</u>
<u>National Do Not Call Registry Class</u>

All persons within the United States who, from four years prior to the filing of this action to whom: (1) United sent (2) at least two texts similar to those received by Plaintiff and set forth above (3) promoting United's products or services; (4) to residential phone numbers listed on the National Do Not Call Registry for at least 30 days before the first text; and (5) within any twelve-month period.

Excluded from the Do Not Call Registry Class are persons for whom United's records show that, before each challenged call or text message necessary to establish membership in the class, the individual texted was associated with either: (a) a purchase, policy, renewal, or other transaction involving United products or services within the preceding 18 months; or (b) an inquiry or application directed to United products or services within the preceding 3 months. This exclusion does not apply to any call or text message made after the person requested not to receive further telemarketing calls or text messages made by or on behalf of United.

Class 2
National Company Specific Do Not Call Class

All persons within the United States who, from four years prior to the filing of this action to whom: (1) United sent (2) at least two texts similar to those received by Plaintiff and set forth above (3) promoting United's products or services; (4) to residential phone numbers (5) after a communication to United that they did not wish to receive such text messages by replying to the messages with a "stop" or similar opt out instruction.

Class 3
Quiet Hours Claims

All persons within the United States who, from four years prior to the filing of this action to whom: (1) United sent (2) at least two texts similar to those received by Plaintiff and set forth above (3) promoting United's products or services; (4) to residential phone numbers (5) before the hour of 8:00 a.m. or after 9:00 p.m. local time.

87. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

88. Excluded from the classes are all consumers who, at the time they received the Texts at issue, had an established business relationship with United that had not been terminated.

89. The class as defined above is identifiable through phone records and phone number databases in United's possession.

90. The potential class members number is expected to number in the hundreds of thousands. Individual joinder of these persons is impracticable.

91. Plaintiff is a member of all three classes.

92. There are questions of law and fact common to Plaintiff and to the proposed classes, including, but not limited to, the following:

a. Whether United violated the TCPA by sending dual-purpose telemarketing texts to consumers' residential telephone lines listed on the National Do Not Call Registry;

b. Whether United violated the TCPA by sending dual-purpose telemarketing texts to consumers' residential telephone lines after they had made a company specific Internal Do Not Call demand that such texts cease;

c. Whether United violated the TCPA by sending dual-purpose telemarketing texts to consumers' residential telephone lines listed on the National Do Not Call Registry;

d. Whether the texts sent to class member by United were dual-purpose telemarketing solicitations subject to the Do Not Call protections of 47 U.S.C. 227(c);

e. Whether United sent class members telemarketing texts without obtaining the recipients' prior consent for the call;

f. Whether Plaintiff and the class members are entitled to statutory damages because of United's actions.

93. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by United and are based on the same legal and remedial theories.

94. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the

13

classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

95.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

96.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

97.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

98.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

99.     As a result of United's violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff and members of the Class are entitled to an award of up to $500 in damages for each call made in violation of this section. The Court may award up to $1,500 if the violation was found to be "willful or knowing".

100.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf from making calls advertising their goods or services in violation of the TCPA.

14

**COUNT I**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)**
**On Behalf of Plaintiff and the National Do Not Call Registry Class**

101.    Plaintiff repeats and incorporates the allegations set forth above.

102.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing solicitations to Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

103.    United's violations were negligent, willful, or knowing.

104.    As a result of United's actions, Plaintiff and members of the Class are entitled to an award of statutory damages for every call made.

105.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting United from making telemarketing solicitations to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

**COUNT II**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**
**On Behalf of Plaintiff and the Internal Do-Not-Call Registry Class**

106.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

107.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate…any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) *Written policy*. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

15

(2) *Training of personnel engaged in telemarketing.* Personnel engaged in…any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

108.    Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

109.    United failed to honor Plaintiff's and the Internal Do-Not-Call Class Members' opt-out requests and instead continued to send Plaintiff and the Internal Do-Not-Call Class Members text solicitation seeking to sell United's goods or services. United's violations were negligent, willful, or knowing.

110.    As a result of United's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class are entitled to an award of statutory damages for each and every violative call made.

111.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting United for continuing to send text messages to class members after consumers

16

informed United they no longer wanted to receive text messages from United seeking to sell its goods or services.

## COUNT III
### Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(1)
### On Behalf of Plaintiff and the Time Of Day Class

112.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

113.    The TCPA also provides that no person or entity shall initiate any telephone solicitation to any residential telephone subscriber before the hour of 8:00 a.m. or after 9:00 p.m. local time at the called party's location. *See* 47 C.F.R. § 64.1200(c)(1).

114.    Despite this prohibition, United sent Texts to Plaintiff and the members of the class, seeking to sell United's goods or services before 8:00 a.m. local time. Specifically, on August 19, 2025, United sent Plaintiff a solicitation text at 7:25 a.m. Central Time, and on August 30, 2025, United sent Plaintiff a solicitation text at 5:31 a.m. Central Time.

115.    Plaintiff and members of the Class are entitled to an award of statutory damages for each and every violative call made.

116.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting United for continuing to send text messages to consumers seeking to sell United's goods or services in violation of the time-of-day provisions of 47 C.F.R. § 64.1200(c)(1).

## PRAYER FOR RELIEF

WHEREFORE, for himself and all class members, Plaintiff request the following relief:

A.    Injunctive relief prohibiting United from sending text message solicitations to consumer's residential telephone numbers that are listed on the National Do Not Call Registry.

17

B.      Injunctive relief prohibiting United from sending text message solicitations to consumers' residential telephone numbers after consumers have made a specific stop or opt out request.

C.      Injunctive relief prohibiting United from sending text message solicitations to consumers prior to 8:00 a.m. or after 9:00 p.m. without first obtaining their prior express consent.

D.      Because of United's violations of the TCPA, Plaintiff seeks for himself and the other putative Class members up to $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227 (c)(5).

E.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class.

F.      Such other relief as the Court deems just and proper.

Plaintiff requests a jury trial as to all claims of the complaint so triable.

PLAINTIFF,
By their attorneys

/s/ Alexander H. Burke
Alexander H. Burke (IL Bar #6281095)
**Burke Law Offices, LLC**
909 Davis Street, Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com

Jonathan R. Marshall (IL Bar #6295227)
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jmarshall@baileyglasser.com

James L. Kauffman (pro hac vice anticipated)
John W. Barrett (pro hac vice anticipated)
**Bailey & Glasser LLP**

18

1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
JKauffman@baileyglasser.com

19